FRANK D. GRAY v. MITCHELL M. ANDREWS.

192 So. 634
Division A
Opinion Filed December 12, 1939
Rehearing Denied January 9, 1940

*Claude L. Gray,* for Appellant;

*Joe Scott Kirton* and *C. P. Dickinson,* for Appellee.

THOMAS, J.—Two doctors of medicine, C. D. Christ and F. D. Gray, appellant, formed a partnership for the practice of their profession in the city of Orlando. During this association a third physician, Doctor Andrews, appellee here, became associated with them under an arrangement by which appellee was to receive the first $200 from his patients, the partnership the next $50 as payment on the office expenses and the remainder was to be distributed one-half to appellee and one-half to the partners.

In 1938 Doctor Christ died and the precise scheme was continued between the surviving partner and appellee except that the contribution to the office expense was $100, so that appellee received the first $200, Doctor Gray the next $100, and the income from appellee's patients above the sum of $300 was divided equally between them. According to appellee's own testimony, the original arrangement with Christ and Gray was continued with the exception of the amount deducted for the office expense. He testified also that the distribution was made on the basis of "cash re-

ceipts each month," regardless of when the services were rendered.

After the death of Doctor Christ monies due for services performed by the appellee were collected by the surviving partner, appellant, and half of them paid by him to the appellee and the other half deposited in the account of Christ and Gray.

Under the new arrangement between appellant and appellee the former provided a bookkeeper and other employees and hired servants whom he alone paid and had the right to discharge. He exercised general supervision of the clinic which both of them used in their work. The association was originally planned to last for a period of six months and at the end of that time by mutual consent it was extended for another month.

When the parties finally severed their relationship, certain accounts were due from various patients of appellee which appeared on the day book or "diary" originally kept by appellee and on the ledger in the hands of the appellant. Both of these records were taken by the latter when he moved from the location where they had conducted the clinic. After the separation, both physicians practiced in different locations, but the appellant continued to collect accounts receivable for services performed by appellee and to remit to him monthly one-half of the monies paid.

The record is silent as to the intent of the parties with reference to the collection, ownership and distribution of monies received after termination of the contract for work done by appellee, while it remained in force. There appears to have been no dissention during the seven months period that litigants were associated together and discord arose after severance of their relationship. The issue is, therefore, confined to a determination of their respective rights

in the fees for services rendered by appellee during the relationship but paid for after its dissolution.

The chancellor reasoned that these monies, disbursed as we have described, represented the income from the personal efforts of appellee and that they belonged to him except that, while the agreement lasted, he was obligated to contribute $100 to office expense and share with appellant his income in excess of $300. He concluded that in this situation the appellee was entitled to his day book and the accounts of patients he had treated. He further decreed that appellant be enjoined from collecting the accounts in question.

It was the chancellor's opinion that a determination of the present controversy was not aided by the construction placed upon accounts of the same status remaining unpaid after the death of the member of the firm of Christ & Gray because that interpretation had not been adopted by the parties at the time of entering into the subsequent contract.

We consider the payment by appellant to appellee and the acceptance by the latter of monies received on the accounts collected after the death of Doctor Christ very helpful in determining what should be a determination of the rights of the parties in this cause because it is clear to us from the record that the arrangement between appellant and appellee was a continuation of the one between appellee and Christ and Gray and so understood by both parties.

It has been held that the construction placed upon a contract by the parties themselves will be resorted to to clarify any of its ambiguous terms.

In Holmes v. Stearns Lumber & Export Co., 66 Fla. 259, 267, 63 South. Rep. 449, 452, this Court quoted from Shouse v. Doane, 39 Fla. 95, 21 South. Rep. 807:

" 'When the terms of a written contract are in any re-

spect doubtful or uncertain, or if the contract contains no provisions on a given point, or if it fails to define with certainty the duties of the parties with respect to a particular matter, or in a given emergency, and the parties to it have by their conduct placed a construction upon it which is reasonable, such construction will be adopted by the court upon the principle that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract.'" See also Webster v. Clark, 34 Fla. 637, 16 South Rep. 601, 27 L. R. A. 126, 43 Am. St. Rep. 217.

This rule is urged by appellant in support of his position that all unpaid accounts accruing during the arrangement and paid after dissolution should be disbursed the same as those actually collected in that period except, of course, the deductible items totaling $300. He contends, and we think properly, that when the agreement was made the reference to a similar association among the parties here and the physician who died should be considered by the court in adjudicating the right to the original accounts receivable because the appellee had acquiesced in distribution of accounts of the same status representing work he did in the same place under identical circumstances, the new arrangement having been necessitated by the death of one of the partners.

The chancellor did not agree with this contention but ordered the ledger and day book delivered to appellee on the theory that he was entitled to the entire amount of money paid by patients whom he treated before the parties ended their association.

We think this conclusion is incorrect because of the

authorities which we have cited and also for the reason that the appellee testified himself, as we have pointed out, that distributions were made at the end of each month regardless of the exact months when the services were performed. For illustration, money received the last month the parties operated together was for actual receipts in that month, although the services may have been rendered in the first month. It seems only logical that monies paid by former patients were the fruits of the labor of the appellee while he was occupying an office maintained by the appellant, having advantage of not only the equipment but also of a staff of employees, including a book-keeper. We fail to see how the status of these accounts was affected because some patients paid more promptly than others.

We are not concerned with the items of $200 and $100 payable to appellee and appellant, respectively, because those have been dispensed, but the profits after deduction of those amounts represented services performed by the appellee while he received the benefits of location, employees and equipment furnished by appellant and he should not be allowed to escape sharing them with the associate who in part made their earning possible.

Our conclusion, therefore, is that whether the debts due by patients treated by the appellee are collected by him or by appellant they should be divided equally but that the appellant should return to the appellee his day book or "diary' and the list of patients of appellee appearing in the ledger.

The decree is reversed with directions to enter one consistent with this opinion.

Reversed.

TERRELL, C. J., and BUFORD, J., concur.

CHAPMAN, J., concurs in opinion and judgment.

Justices WHITFIELD and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.